■ SHELDON BROHMAN, Appellant, v NEW YORK CONVENTION CENTER OPERATING CORPORATION, Respondent, et al., Defendant. [740 NYS2d 312] —Order, Supreme Court, New York County (Alice Schlesinger, J.), entered on or about February 28, 2001, which, in an action for wrongful discharge under Civil Service Law § 75-b, granted defendant's motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.

In pertinent part, Civil Service Law § 75-b (2) (b) requires that prior to disclosing information to a governmental body, a public employee "shall have made a good faith effort to provide the appointing authority or his or her designee the information to be disclosed and shall provide the appointing authority or designee a reasonable time to take appropriate action." The

"appointing authority" is the "officer, commission or body having the power of appointment to subordinate positions" (Civil Service Law § 2 [9]). Here, that would be the Board of Directors of defendant New York Convention Center Operating Corporation, a public benefit corporation (see, Public Authorities Law §§ 2562, 2563 [8]); defendant's designee would be its president and chief executive officer at the time of the alleged improper governmental actions, a named defendant herein who allegedly committed such actions, but against whom plaintiff has discontinued, and who, the record shows, was the only person to exercise the authority to hire and fire during his tenure with defendant. Plaintiff admittedly had no communications with either defendant's Board of Directors or its president and chief operating officer, but argues that his communications with one of defendant's vice-presidents satisfied the pre-disclosure notice requirement. Assuming in plaintiff's favor that the vice-president can be considered defendant's designee, plaintiff's argument is otherwise undermined by his own deposition testimony and opposing affidavit, which show that his communications with the vice-president were not for the purpose of informing defendant of its president's improper governmental actions, but rather that he used the vice-president as a "friend and a soundboard," went to him for "advice," did not ask him to put an end to the alleged improprieties, and had a mutual understanding with him that their conversations would "absolutely" go no further. Concur— Williams, P.J., Saxe, Buckley, Ellerin and Rubin, JJ.